In re SYSTEMS COMMUNICATIONS, INC., Debtor.

**Bankruptcy No. 98–9299–8P7.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 20, 1999.

David W. Steen, Tampa, FL, for debtor.

Edward K. Cottrell, Jacksonville, FL, for petitioning creditors.

David M. Connors, Penrod W. Keith, Salt Lake City, UT, Special Counsel for petitioning creditors.

## ORDER DISMISSING INVOLUNTARY PETITION

ALEXANDER L. PASKAY, Chief Judge.

This is a hotly contested involuntary case in which, after protracted litigation, this Court entered an Order on Jan. 21, 1999, narrowing the issues for trial. The Debtor, Systems Communications, Inc. (SCI), initially raised as defenses that this involuntary case cannot be maintained because (1) the Petitioners are not creditors of the Debtor; and (2) the case was filed in bad faith because the filing was merely a litigation tactic in an attempt to acquire SCI's assets. After considering the issues raised by SCI, this Court determined that there were a sufficient number of Petitioning Creditors; the Petitioning Creditors' claims are not contingent as to liability; nor are they subject to bona fide dispute; they aggregate at least $10,000 or more; and, therefore, the involuntary case cannot be dismissed for an insufficient number of eligible Petitioners. This Court's January 21, 1999 Order narrowed the issues to be addressed at trial, which are (1) whether SCI is generally not paying its debts as they become due; and (2) whether the Petition was filed in bad faith so that it would be inappropriate to enter an order for relief. The record as established at the final evidentiary hearing produced the following relevant facts:

SCI is a publicly held corporation whose stock is traded over the counter. It is not engaged in any business in the orthodox

sense; it does not sell anything, buy anything, nor does it provide any service. Its activity is limited to obtaining funds for other corporations and to act as a holding company for acquired subsidiaries.

At the relevant time, SCI owned all the outstanding shares of three subsidiaries, all of which no longer conduct any business and are now defunct. Basically, SCI raises funds by issuing convertible debenture bonds; selling warrants for corporate stock; selling treasury stocks; borrowing funds by issuing promissory notes to investors; and entering into joint ventures, described as strategic alliances, whereby it procures contracts to be performed by others.

■ SCI's assets, the majority of which are unmarketable intangibles such as accrued salaries, depreciation and the like, have a book value of $196,598.96. Its outstanding liabilities total $3,954,139.60. There is no question that the Debtor's cash position is dismal. Although it is without dispute that SCI is insolvent, it must be noted that insolvency is not a requirement for the entry of an order for relief in an involuntary case under 11 U.S.C. § 303.

The ultimate questions are whether SCI generally pays its debts as they become due and whether the Involuntary Petition was filed for an improper purpose and in bad faith. During June 1, 1997 through December 31, 1997, SCI paid 90.3 percent of all new invoices due to noninsiders and paid 97.9 percent of all new invoices to insiders. During the period of January 1, 1998 through June 1, 1998, SCI paid 59.2 percent of new invoices due to noninsiders and 101.5 percent to insiders. The Debtor paid 83.2 percent of the total of the new accounts payable invoices during June 1, 1997 through June 1, 1998. (Exhibit 181).

■ Petitioning Creditors urge that the picture is actually more grim because the issuance of stock in satisfaction of claims does not constitute a payment of a claim. This Court disagrees. If a holder of a claim accepts stock in satisfaction of its claim, the stock is legally equivalent to an actual cash payment since the claim has been satisfied.

It is without dispute that as of the commencement of this case, SCI was indebted on convertible debentures in the aggregate amount of $2,636,000.00. Numerous outstanding debts are over 120–days past due and some outstanding debts are more than one year past due. Petitioner's Exhibit 185 reflects that as of January 1998, SCI had trade obligations, 7 percent of which were under 120–days past due; and 92.7 percent of which were over 120–days past due. Also, five judgments against SCI in an aggregate amount in excess of $600,-000.00 remained unsatisfied as of the date of the commencement of this case.

■ If one narrowly views this picture, one might conclude that the Debtor does not generally pay its debts as they become due. In addition to considering the number of debts unpaid each month to those paid, and the amount of delinquency, two other factors must be considered: (1) the materiality of nonpayment; and (2) the nature of the debtor's conduct of its financial affairs. Both have a bearing on whether the debtor is generally paying its debts as they become due. *See In re Ramm Industries, Inc.,* 83 B.R. 815 (Bankr.M.D.Fla.1988); *In re Tarletz,* 27 B.R. 787, 789 (Bankr.D.Colo.1983). With respect to the third factor, materiality of nonpayment of debts, the debts should be examined to determine whether there is a reasonable basis for the nonpayment. For instance, a bona fide dispute or commercial practice might not only explain, but justify the debtor's failure to pay a particular debt. *Id.*

■ In this case, it is evident from the record that by agreement, the holders of claims for professional services and indenture bonds have agreed to a moratorium and have not pressed for collection. The fact that trade debts are minimal and there are no current pressing obligations

weighs against a finding that the Debtor is generally not paying its debts as they become due. *See Ramm Industries, supra* at 825. This Court is not unmindful of the Petitioning Creditors' argument, supported by *In re Knoth,* 168 B.R. 311, 317 (Bankr.S.C.1994), that no demand is necessary in order to characterize a debt as delinquent. While this is true, *Knoth* also states that the "mechanical test" of viewing the amounts and delinquency of debts "must be employed with regard to any unique circumstances attendant to a particular proceeding." *Knoth, Id.* at 318. Thus, a failure to recognize that the creditors have agreed to a moratorium would be a failure to evaluate the basis for nonpayment or the materiality factor.

In addition, the nature of SCI's business, unlike conventional businesses where invoices are paid thirty days, net ten, requires that they be paid when SCI is able to raise money or able to satisfy these outstanding obligations by issuance of stock. In fact, creditors who hold claims in excess of $800,000 oppose the entry of an order for relief in the case whereas the Petitioning Creditors, whose claims are less than $50,000 in the aggregate, desire the entry of the order for relief. Thus, the materiality and the nature of SCI's conduct of its affairs weigh against a finding that SCI is generally not paying its debts as they become due. Viewing the totality of the circumstances, this Court is satisfied that the entry of an order for relief would be inappropriate.

SCI also points out that its Motion to Dismiss this involuntary case based upon Section 305 is still pending. It is contended that a dismissal is in the best interest of all creditors and the SCI. The creditors, other than the Petitioning Creditors, and SCI's shareholders are opposed to maintaining this bankruptcy case.

The Petitioning Creditors elected to proceed against the Debtor in a forum in Utah and the lawsuit is still pending. Thus, the Petitioning Creditors have an appropriate forum in which to litigate their claim.

SCI contends that if this Court considers the totality of the picture, including the potential merger which may result in SCI having the ability to pay all its debts in the near future, it would be inappropriate to enter an order for relief.

Finally, this record leaves no doubt that considering the assets of this Debtor against the outstanding liabilities, it is clear there cannot be any meaningful administration in Chapter 7. If an order for relief is entered and SCI's assets are liquidated in Chapter 7 case, no one will receive a meaningful return on their claims. This is largely because SCI has no saleable hard assets and SCI's intangible assets are not convertible to actual cash.

Counsel for the petitioning creditors contends, however, that there might be a meaningful administration due to the possibility of recovering a preference from a creditor who received a $110,000.00 payment within the time frame for an avoidable preference. It appears that this was not a cash payment, however, but a transfer of stock. The stock would have very little value, if any, after this Court entered an order for relief.

In sum, having considered the total picture, especially the inadvisability of liquidation and the poor economic sense of a Chapter 7 liquidation, this Court is satisfied that entering an order for relief in this case would be inappropriate and, therefore, the involuntary petition filed by the Petitioning Creditors should be dismissed.

Accordingly, it is

ORDERED, ADJUDGED and DECREED that the Involuntary Petition for the entry of an order for relief, pursuant to 11 U.S.C. § 303, is hereby denied. The above-captioned case is hereby dismissed.